IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JEANETTE D. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. CBD-18-2664 |
| | ) |
| ANDREW SAUL,[1] | ) |
| | ) |
|     Commissioner, | ) |
|     Social Security Administration | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Jeanette D. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). The ALJ also denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 15, Plaintiff's Alternative Motion for Remand ("Plaintiff's Alternative Motion"), ECF No. 15, Defendant's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 20 and Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), ECF No. 21. The Court has reviewed the motions, related memoranda, and the applicable law.

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of the Social Security Administration. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On June 9, 2012, Plaintiff filed for DIB and SSI under Titles II and XVI of the Social Security Act, alleging disability beginning November 23, 2013. R. 16. Plaintiff alleged disability due to multiple impairments, including: damaged nerves, arthritis, hypertension, leg pain, spinal damage due to lower back trauma, back pain, neck pain, and high blood pressure. R. 210. Plaintiff's claims were initially denied on October 16, 2014 and upon reconsideration on January 8, 2015. R. 16. An administrative hearing was held on August 23, 2016. R. 16. On August 25, 2017, Plaintiff's claims for DIB and SSI were denied. R. 28. Plaintiff sought review by the Appeals Council, which concluded on July 24, 2018, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job

correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Titles II and XVI if he is unable "to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process ("Five-Step Analysis"). R. 16–28. At step one, the ALJ determined that Plaintiff had not

engaged in substantial gainful activity since November 23, 2013, the alleged onset date of Plaintiff's disability. R. 19. At step two, under 20 C.F.R. §§ 404.1520(c), 416.920(c) the ALJ determined that Plaintiff had the following severe impairments: cervical osteoarthritis, cervical radiculopathy, lumbar radiculopathy, degenerative facet joint disease of the lumbar spine, osteoarthritis of the right knee, and obesity. R. 19. The ALJ found that Plaintiff's hypertension has "no more than a minimal effect on [Plaintiff's] ability to perform basic work activities, and is therefore a non-severe [impairment]." R. 19. At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 19. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can never climb ladders/ropes/scaffolds, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.
> [Plaintiff] can perform occasional rotation of the neck to each side.
> [Plaintiff] can frequently reach in all directions bilaterally.
> [Plaintiff] can have no concentrated exposure to moving machinery and unprotected heights.

R. 20. At step four, the ALJ determined Plaintiff can perform her past relevant work as a security guard. R. 26. At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: inspector, housekeeper, and general office helper. R. 27. The ALJ found that "Plaintiff has not been under a disability, as defined in the Social Security Act, from November 23, 2013, through the date of this decision." R. 27.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ or in the alternative, remand the case to the Commissioner for further proceedings, alleging that the ALJ erred in her step three analysis. Pl.'s Mem. in Supp. of Mot. 9, ECF No. 15–1. For the reasons set forth below, the Court accepts Plaintiff's argument and remands the case back to the SSA.

**Step three analysis**

Plaintiff avers that the ALJ erred at step three of the Five-Step Analysis because the ALJ failed to properly evaluate whether Plaintiff's impairments met or equaled Listing 1.04 under 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 1.04"). *Id*. at 9. Plaintiff also avers that remand is warranted because the ALJ's conclusions "are factually inaccurate and are contradicted by the objective evidence, as well as her own findings of fact." *Id*. at 14. Further, Plaintiff contends that the "ALJ simply and erroneously asserted an absence of evidence instead of explaining her evaluation of the existing evidence." *Id*. Specifically, Plaintiff contends the ALJ erred because her conclusion that the record does not demonstrate evidence of nerve root compression at step three of the Five-Step Analysis conflicts with the ALJ's conclusion at step two stating that Plaintiff had lumbar and cervical radiculopathy. *Id*. at 14. Plaintiff avers radiculopathy is synonymous to nerve root compression. *Id.* Plaintiff further contends that the ALJ erred because she concluded that the record did not demonstrate: (1) limitation of motion of the spine; (2) evidence of muscle weakness; (3) sensory loss; (4) reflex loss; and (5) positive straight-leg raising, despite contradicting evidence not only in the record, but also identified by the ALJ. *Id.* at 16–19. Lastly, Plaintiff contends:

> The ALJ invoked a heightened burden of proof by misstating the 'motor loss' requirement of Listing 1.04A. Specifically, . . . the ALJ improperly defined 'motor loss' as requiring 'atrophy with associated muscle weakness,' which suggest that she believed that

6

> Plaintiff was required to show evidence of both atrophy and
> muscle weakness in order to satisfy this element of Listing 1.04A.

*Id.* at 16–17.

Defendant contends that the ALJ did not err because a finding of radiculopathy at step two of the ALJ's Five-Step Analysis, does not require a finding of nerve root compression at step three. Def.'s Mem. of Law in Supp. of Def.'s Mot. 6, ECF No. 20–1. Further, Defendant argues that the record supports the ALJ's finding that Plaintiff's impairments did not meet Listing 1.04 and that Plaintiff's "ability to identify isolated pieces of evidence supporting a finding contrary to the ALJ's is not enough to undermine the ALJ's listing decision . . ." *Id.* at 8.

As stated above, step three of an ALJ's Five-Step Analysis requires the ALJ to determine whether Plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in [20 C.F.R. Part 404, Subpart P, Appendix 1.]" 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If a claimant's condition meets or equals the listed impairments, she is entitled to a conclusive presumption that she is disabled within the meaning of the Social Security Act. *Taylor v. Colvin*, No. ADC-15-2204, 2016 WL 3190637, at *6 (D. Md. June 6, 2016) (citing *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)). Pursuant to Listing 1.04, Plaintiff is entitled to a conclusive presumption that she is disabled if she can show that she has a disorder of the spine resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Part 404, Subpart P, Appendix 1; *See also Taylor*, 2016 WL 3190637, at *6. In addition, Plaintiff must show evidence of:

> (1) neuro-anatomic distribution of pain; (2) limitation of motion of
> the spine; (3) motor loss (atrophy with associated muscle weakness
> or muscle weakness) accompanied by sensory or reflex loss, and if
> there is involvement of the lower back; (4) positive straight-leg
> raising test (sitting and supine).

*Id.* "The burden of proof is on [Plaintiff] to show that [she] meets all of the specified medical criteria." *Hepding v. Comm'r, Soc. Sec. Admin.*, No. ADC-17-3697, 2018 WL 6172497, at *6 (D. Md. Nov. 11, 2018) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An ALJ must identify the relevant listings and compare each of the criteria to the evidence of the claimant's symptoms when there is 'ample evidence in the record to support a determination' that the claimant's impairments meet or equal a listing." *Combest v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-1098, 2016 WL 3512135, at *2 (D. Md. June 22, 2016) (citing *Cooks v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986)). "Remand is not warranted 'in circumstances where it is clear from the record which listing or listings . . . were considered,' and the court can still 'readily determine whether there was substantial evidence to support the ALJ's Step Three conclusion.'" *Id.* (citing *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522, (D. Md. 2002)). However, "[r]emand is appropriate where the 'ALJ's opinion failed to apply the requirements of the listings to the medical record.'" *Hepding*, 2018 WL 6172497, at *6 (citing *Radford v. Colvin*, 734 F.3d 288, 292 (4th Cir. 2013)). If an ALJ fails to specifically apply the pertinent legal requirements to the record evidence, the court is unable to conduct meaningful review. *Letitia L. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3982, 2019 WL 7370355, at *3 (D. Md. Dec. 31, 2019) (citing *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015)).

The ALJ's analysis regarding Listing 1.04 is as follows:

> [Plaintiff's] spinal impairments do not meet Listing 1.04 (Disorders of the Spine) because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication and an inability to

ambulate effectively, as defined in 1.00B2b. As discussed further
below, while MRIs have confirmed degenerative disease in the
cervical and lumbar spine, [Plaintiff's] physical examinations have
consistently shown normal extremity strength and ambulation.

R. 19 (internal citations omitted).

## I. The ALJ erred because in step two, she concluded that Plaintiff suffers from the severe impairments of cervical and lumbar radiculopathy, but then contradicted herself in step three by concluding there was no evidence of nerve root compression.

Radiculopathy is defined as: "Irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." *Taylor*, 2016 WL 3190637, at *7, n.2 (citing *Radiculopathy*, Merriam-Webster Collegiate Dictionary, (11th ed. 2003)); *See also Walker v. Colvin*, No. CBD-15-2293, 2016 WL 8669936, at *4 (D. Md. July 15, 2016) (stating that radiculopathy is defined as compression of the nerve root) (citing *Radiculopathy*, Gale Encyclopedia of Medicine (2008)). "[R]adiculopathy is a disease of the nerve roots" and "[n]erve root compression is a form of radiculopathy." *See Hays*, 907 F.2d at 1457 nn.4–5; *Helene C. v. Comm'r Soc. Sec. Admin.*, No. DLB-18-2938, 2019 WL 7370353, at *3 (D. Md. Dec. 31, 2019) (citing *Walker*, 2016 WL 8669936, at *4); *Jeffery L.B. v. Berryhill*, No. TMD-17-2393, 2019 WL 556842, at *4 (D. Md. Feb. 2, 2019); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *5 (D. Md. Sept. 24, 2019).

In this case, the ALJ acknowledged Plaintiff's diagnosis of lumbar and cervical radiculopathy and considered it a severe impairment at step two of the Five-Step Analysis. R. 19. However, the ALJ in step three, determined that Plaintiff did not meet the requirements for Listing 1.04A because the record did not demonstrate a compromise of a nerve root. R. 19. The Court finds the ALJ's determination that Plaintiff did not meet the threshold requirement in Listing 1.04A an error because radiculopathy is defined as compression of the nerve root. Aside

9

from the Merriam-Webster dictionary and the Gale Encyclopedia of Medicine, there are other medical dictionaries and medical sources that also define radiculopathy as nerve root compression. *See* Dani J. Tennenhouse, 2 Attorneys Medical Deskbook *Types of Pain* § 26:8, Westlaw (database updated October 2019) (listing radiculopathy and nerve root compression synonymously); Johns Hopkins Medicine, *Health: Radiculopathy*, https://www.hopkinsmedicine.org-/health/conditions-and-diseases/radiculopathy (last visited Feb. 25, 2020) ("Cervical radiculopathy describes a compressed nerve root in the neck"); Jason David Eubanks, MD, Cervical Radiculopathy: Nonoperative Management of Neck Pain and Radicular Symptoms 1 (Case Western Reserve University School of Medicine, 2010) ("Cervical radiculopathy is a disease process marked by nerve compression . . ."); American Academy of Orthopaedic Surgeons, *Cervical Radiculopathy (Pinched Nerve)*, https://orthoinfo.aaos.org/en/diseases-conditions/cervical-radiculopathy-pinched-nerve (last visited Feb. 25, 2020) ("Cervical radiculopathy, commonly called a "pinched nerve" occurs when a nerve in the neck is compressed or irritated . . .").

In addition, as noted by Plaintiff, other circuits addressing this issue have also defined radiculopathy as synonymous with nerve root compression. *See Cinatl v. Colvin*, No. 13 CV 7565, 2015 WL 8601780, at *3 (N.D. Ill. Dec. 14, 2015) (citing Dani J. Tennenhouse, 2 Attorneys Medical Deskbook *Types of Pain* § 26:8, Westlaw (database updated October 2019)); *Mason v. Ryan*, No. CV 17-08098-PCT-DGC (MHB), 2018 WL 2119398, at *1, n.1 (D. Ariz. May 8, 2018) ("Cervical radiculopathy is a syndrome of pain and/or sensorimotor deficits due to compression of a cervical nerve root") (citing U.S. National Library of Medicine, *National Institutes of Health Cervical Radiculopathy: A Review*, https://www.ncbi.nlm.nih.gov/ pmc/articles/PMC3192889/ (last visited May 1, 2018)); *Killen v. Stryker Spine*, No. 11-1508,

2012 WL 4482371, at *1, n.4 (W.D. Pa. Aug. 21, 2012) ("Radiculopathy is the medical term for the pain and other symptoms resulting from a compressed nerve root."); *Caraballo v. Astrue*, No. 4:11-CV-00112, 2012 WL 983579, at *8, n.27 (M.D. Pa. 2012) ("Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain numbness, tingling, or weakness along the course of the nerve.") (citing *Radiculopathy*, MedicineNet.com, http://www.medicmenet.com/ radiculopathy/article.htm (Last accessed March 20, 2012)); *Wojciechowski v. Barnhart*, No. A.02-263-KAJ, 2004 WL 878468, at *2, n.2 (D. Del. Apr. 21, 2004) ("Radiculopathy is a disease of the spine in which there is a compression on the nerve roots which results in neural disorders of the lower limbs.") (citing *Radiculopathy*, Dorland's Illustrated Medical Dictionary 1511 (29th ed. 2000); *Stugart v. Berryhill*, No. No. 4:17-CV-708, 2018 WL 3469043, at *2, n.1 (M.D. Pa. June 22, 2018) ("Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve.").

    The Court acknowledges that this district is split as to whether radiculopathy is synonymous to nerve root compression,[2] however, the Court finds that there are sufficient scientific and legal sources to support Plaintiff's assertion. The Court, therefore, finds that the ALJ erred by concluding that Plaintiff had cervical and lumbar radiculopathy, but did not have nerve root compression.

---

[2] *See generally Combest*, 2016 WL 3512135, at *2, n.1 ("The Commissioner rightly points out that cervical radiculopathy 'is legally insufficient to meet or equal Listing 1.04A' absent any evidence of nerve root compression."); *Crowl v. Colvin*, No. BPG-15-446, 2016 WL 245555, at *2 (D. Md. Jan. 20, 2016) ("Though plaintiff has presented some evidence of radiculopathy, this condition is legally insufficient to meet or equal Listing 1.04A."); *Smick v. Comm'r., Soc. Sec.*, No. GLR-14-2955, 2015 WL 4092449, at *2 (D. Md. July 6. 2015) (holding that radiculopathy does not equate to nerve root compression).

**II. The ALJ erred because she failed to specifically apply the pertinent legal requirements to the record evidence, leaving the Court to speculate how her findings applied to the law.**

In the instant case, the record implicated Listing 1.04, therefore, the ALJ identified that listing, and determined Plaintiff did not meet the threshold issue because she did not demonstrate compromise of the nerve root. R. 19. The ALJ also identified the remaining elements of Listing 1.04. R. 19. To support the ALJ's conclusion, the ALJ stated, "while MRIs which confirmed degenerative disease in the cervical and lumbar spine, [Plaintiff's] physical examinations have consistently shown normal extremity strength and ambulation." R. 19 (internal citations omitted). The ALJ tracks the longitudinal course of treatment for Plaintiff's neck and back pain in her RFC analysis, R. 20–26, which the Court may consider in evaluating whether the ALJ properly analyzed step three of the Five-Step Analysis. *See Hepding*, 2018 WL 6172497, at *6 ("In evaluating whether an ALJ's listing comparison was proper . . . the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety.").

However, what is unclear to the Court, is which part of the ALJ's analysis applies to each element of Listing 1.04A. The ALJ broadly discusses Plaintiff's medical records in the RFC analysis, however, failed to "*specific*[*ally*] appl[y] . . . the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (emphasis added). It is not the Court's role on judicial review to "speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox*, 632 F. App'x at 755. By broadly stating that Plaintiff's MRI's show only degenerative disease in the cervical and lumbar spine, and normal strength and ambulation, R. 19, does not allow the Court to conduct meaningful review. Further, the Court also cannot ascertain which elements were met and which

12

were not.  The ALJ's RFC analysis although thorough, does not cite to which element in Listing 1.04A the analysis applies to.  Essentially, the Court is left to guess what piece of evidence is significant for each element in Listing 1.04A.  On remand, the ALJ is instructed to specifically identify each element of the listings that are implicated, and apply the record evidence in a manner in which the Court can clearly determine how the findings are relevant to each element of the listing.

Plaintiff also takes issue with: (1) the ALJ's individual findings for each element listed under Listing 1.04A; and (2) the ALJ's definition of motor loss.  Pl.'s Mem. in Supp. of Mot. 16–17.  However, in view of the Court's decision to remand the matter due to an overall inadequate review on step three, the Court declines to address Plaintiff's other issues.  *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the Court decided to remand on one issue); *Edna Faye H.*, 2019 WL 4643797, at *6.  On remand, the ALJ should address the other issues raised by Plaintiff.  *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sep. 10, 2019).

### IV.    Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** this matter for further proceedings.

March 3, 2020 
Charles B. Day
United States Magistrate Judge

CBD/hjd